UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AVION SIMBLER,

Plaintiff,

v. Case No. 26-cv-1680-bhl

CO CARR,
CO SERRANO,
SGT TAYSON,
ANTHONY MATUSHAK, and
JOHN DOE,

Defendants.

---

## SCREENING ORDER

---

Plaintiff Avion Simbler, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Simbler's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Simbler has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Simbler has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $11.48. Simbler motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Simbler alleges that on July 18, 2026, while housed in the restricted housing unit, he told CO Serrano of his intentions to harm himself. Simbler asserts that CO Serrano walked by his cell. About an hour later, he again told CO Serrano that he had plans to harm himself. He stated that he had four razors and would use them. Simbler alleges that CO Serrano again walked away. Not long after, CO Carr passed Simbler's cell and Simbler told him that he was suicidal. Simbler states that CO Carr stood at his cellfront and called for Sgt. Tayson. Simbler asserts that, before the sergeant arrived, he began to "swallow metal." Simbler asserts that CO Carr should have told him to stop or sprayed him with OC spray, but instead he continued to wait for the sergeant to arrive. After the sergeant arrived, CO Carr informed him that Simbler had said he was suicidal and was "swallowing metal." Despite Simbler confirming CO Carr's statements, Sgt. Tayson only

informed Simbler that he would let Captain Anthony Matushak know the situation. Simbler asserts that he does not know if Sgt. Tayson or Cpt. Matushak informed the psychological services unit.

Not long after, Simbler again stopped CO Serrano and showed him that he had six razors. Simbler asserts that he began to swallow the razors one at a time in front of CO Serrano. Simbler asserts that CO Serrano did nothing to intervene, but Simbler was removed from his cell and placed on observation. He states that for the next couple of days he had stomach pain and bloody stool and vomited blood.

**THE COURT'S ANALYSIS**

Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018).

In *Freeman v. Berge*, the Seventh Circuit instructed that prison officials must prevent prisoners who have "given way to the [psychological] strain" of incarceration from seriously injuring or killing themselves. 441 F.3d 543, 547 (7th Cir. 2006). *Freeman* was careful, however, to distinguish between allowing suffering as punishment and allowing suffering as a self-inflicted consequence of bad behavior. "The former is prohibited by the Constitution; the latter is a valuable teaching tool." *Hewlett v. Beilke*, No. 25-C-375, 2026 WL 3083827, at *6 (E.D. Wis. Oct. 15, 2026). For example, a mother who refuses to give into her child's demands even as he goes red in the face from holding his breath, teaches her child that no means no and that she cannot be manipulated by his antics. *Id.* To require prison officials to intervene to prevent *all* threats of self-harm would seem to deprive officials of this valuable teaching tool and to empower prisoners to undermine prison discipline and disrupt an otherwise orderly environment simply by threatening to inflict uncomfortable, though non-life-threatening, injuries upon themselves. *Id.* (citing *Freeman*, 441 F.3d at 546-47).

*Freeman* stresses that, at some point, prison officials must step in to prevent a prisoner from endangering his own life or health. But when there is no indication that a prisoner's life or

health is in serious jeopardy, then prison officials do not violate the Constitution when they allow a prisoner to endure the suffering, discomfort, or temporary detrimental consequences that he rationally chooses to inflict upon himself. *Id.* at 547 (affirming summary judgment in favor of prison officials because the prisoner's food deprivation was "self-inflicted" and there was no evidence that he experienced "real suffering, extreme discomfort, or any lasting detrimental health consequences").

At this stage and construing all reasonable inferences in Simbler's favor, the Court will allow him to proceed on an Eighth Amendment claim against CO Serrano and Sgt. Tayson based on allegations that they walked away after Simbler informed them of his intentions to harm himself and/or took steps to do so.

Simbler does not, however, state a claim against CO Carr. Simbler asserts that CO Carr stayed by his cell and called for a sergeant after Simbler informed him that he was suicidal. Simbler further contends that CO Carr should have done something to stop him from "swallowing metal," but the mere fact that CO Carr did not respond in the way Simbler thinks he should have responded does not suggest that CO Carr was deliberately indifferent to the risk Simbler posed to himself. Given that Simbler talked with CO Carr and Sgt. Tayson shortly after he "swallowed metal," the Court cannot reasonably infer that CO Carr knew that Simbler faced a serious risk of harm from his actions, nor can the Court reasonably infer that CO Carr had a reasonable opportunity to intervene before Sgt. Tayson arrived. CO Carr did not ignore or dismiss Simbler's threats, and his failure to perfectly navigate the challenging circumstances *created by Simbler* does not support a finding of deliberate indifference.

Nor does Simbler state a claim against Cpt. Matushak or John Doe. Simbler only speculates that they had knowledge of his threats based on Sgt. Tayson's assertion that he would inform Cpt. Matushak of the situation and the possibility that Cpt. Matushak or Sgt. Tayson may have contacted the psychological services unit. The Court cannot reasonably infer from Simbler's speculation that Cpt. Matushak or the John Doe psychological services unit staff member knew that Simbler faced an imminent threat of serious self-harm. If during the course of discovery, Simbler learns of new facts suggesting that either of these individuals knew of and disregarded information that suggested Simbler faced an imminent threat of serious self-harm, he may seek leave to amend his complaint consistent with the requirements of Civil L. R. 15.

Finally, Simbler asks that he be permitted to pay the remainder of the filing fee using funds in his release account. The Prison Litigation Reform Act requires courts to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). Wisconsin prisoners have two types of accounts, a regular account and a release account. *Spence v. McCaughtry*, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." *Wilson v. Anderson*, Case No. 14-C-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code § DOC 309.466). Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy the filing fee payment requirements. *See Smith v. Huibregtse*, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001). Although federal courts will sometimes allow a plaintiff to pay the initial partial filing fee with funds in his release account, federal courts are less willing to allow a plaintiff to pay the full filing fee from that account. Allowing this practice would significantly deplete the value of the prisoner's release account, thereby undermining the very purpose of the account. Accordingly, the Court will deny Simbler's request to pay the remainder of the filing fee with funds in his release account. Monthly deductions will continue to be made from Simbler's regular account in accordance with §1915(b)(2).

**IT IS THEREFORE ORDERED** that Simbler's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Simbler fails to state a claim against CO Carr, Anthony Matushak, and John Doe so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Simbler's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on CO Serrano and Sgt. Tayson.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, CO Serrano and Sgt. Tayson shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Simbler is located.

**IT IS FURTHER ORDERED** that the agency having custody of Simbler shall collect from his institution trust account the $338.52 balance of the filing fee by collecting monthly

payments from Simbler's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Simbler is transferred to another institution, the transferring institution shall forward a copy of this Order along with Simbler's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Simbler is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 6th day of November, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
Chief United States District Judge